**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**OVERDEVEST NURSERIES, L.P.,**
**578 Bowentown Road**
**Bridgeton, NJ  08302**

**Plaintiff**

**v.**                                    Civil Action No. _____

**R. ALEXANDER ACOSTA,**
**in his official capacity as**
**United States Secretary of Labor**
**200 Constitution Avenue, N.W.,**
**Washington, DC 20210**

**BRYAN JARRETT,**
**in his official capacity as**
**Acting Administrator, Wage & Hour Division**
**United States Department of Labor**
**200 Constitution Avenue, N.W.,**
**Washington DC 20210**

**ROSEMARY LAHASKY**
**in her official capacity as**
**Acting Assistant Secretary of Labor,**
**Employment and**
   **Training Administration**
**United States Department of Labor**
**200 Constitution Avenue, N.W.,**
**Washington DC 20210**

**Defendants.**

**COMPLAINT AND PRAYER FOR DECLARATORY AND**
**INJUNCTIVE RELIEF**

**INTRODUCTION**

1.      Plaintiff challenges the Defendants' interpretation of and application to Plaintiff's workforce of the 2010 Rule defining "corresponding employment" under the federal temporary or seasonal alien agricultural worker program called H-2A.  8 U.S.C. § 1188.   Plaintiff challenges the rule as written and applied to Plaintiff as in excess of or inconsistent with Defendants' statutory authority under the H-2A program.  8 U.S.C. § 1188(a),(c) and 5 U.S.C. §§ 706(2)(A),(C).   Moreover, the Defendants' interpretation of the rule, and their application of the rule inconsistently with the Department of Labor's own statements and practices, was arbitrary and capricious and an abuse of discretion.

2.      Federal law generally requires that workers performing occupations that demand the same skill, effort and responsibility under similar working conditions receive equal pay.  For example, this is true in the H-2A program and the Equal Pay Act.  8 U.S.C. § 1188(a) and (c) and 29 U.S.C. § 206(d).  Under the H-2A program, it has been a long-standing rule that temporary or seasonal alien H-2A workers and U.S. workers who are able, willing and qualified to perform the occupation described in the job order approved by the Department of Labor (DOL) and who perform the duties of that occupation had been considered to be in "corresponding employment" and entitled to the same wages and benefits.  That was certainly the rule prior to the current application of the 2010 Rule to Plaintiff.  Under the Equal Pay Act, the same principle applies with regard to gender.

3.      Determining whether the work is equal involves a review of the full picture of the work performed, and ability, qualification and skills of the workers in

question.  Contrary to DOL's new interpretation of its 2010 Rule on "corresponding employment," workers of very different abilities, qualifications, and skill levels are not in "corresponding employment" simply because they share a particular job duty in common. The totality of the duties performed by each worker, and their qualifications and abilities to perform the entire job must be considered before they can be considered "equal" for this purpose.  A law clerk is not a judge even though both engage in research and writing; nor is an orderly a surgeon just because they both work in hospitals and tend to patients. The full realm of their qualifications and duties being unequal, they would not expect to be paid at the same rate for their work - the differences in skills and responsibilities are reflected in their earnings.  This is universally understood, at least everywhere except the Department of Labor's current interpretation and enforcement of its 2010 "corresponding employment" Rule.

4.      The Department's position in this case is inherently contradictory.   It argues that an unqualified, entry level U.S. worker employed by an H-2A employer is adversely affected if he or she is paid less than a fully-qualified H-2A worker if they perform any task in common, but would not make the same argument if the employer outright refused to hire the same unqualified person as an applicant for an occupation with an experience requirement the Department has approved.  Contrary to Congress' specific direction and the Department's own longstanding interpretation that a worker's ability, willingness to perform a job, and qualifications to do so must be considered in the H-2A context, the Department now misinterprets or ignores that statutory direction and concludes that these factors are completely irrelevant and that essentially everyone

3

working on a farm must be paid the same wage, regardless of ability, willingness, or qualifications. Instead, contrary to its own promise in the current H-2A regulations that "[t]his does not require that every worker on a farm be paid the H-2A required wage," this is precisely what the Department is requiring in this case. 75 Fed. Reg. 6885 (Feb. 12, 2010).

5.      The Department's position in this case, adopted by the administrative decisions below, is that DOL's "corresponding employment" Rule supersedes the statute and governs this case because the Rule does not include the statute's "able, willing, and qualified" language. In other words, the rule trumps the statute. The administrative decisions below also held, incorrectly, that the statutory language only applies to the petition process.

6.      Either the Department's interpretation of its current rule is incorrect, as it would conflict with Congress' clear directive, or the interpretation accurately interprets the rule as written, meaning that the rule itself violates Congress' instructions and must be vacated.

## I.      JURISDICTION AND VENUE

7.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction); § 2201 (authorizing declaratory relief); § 2202 (authorizing injunctive relief); and 5 U.S.C. § 702 (providing for judicial review of agency action under the Administrative Procedure Act ("APA")).

8.      Venue in this judicial district is proper under 28 U.S.C. § 1391(e).

## II.  PARTIES

9.      Plaintiff, OVERDEVEST NURSERIES, L.P. ("Overdevest") is a family-owned limited partnership organized under the laws of the State of New Jersey.  The nursery was founded in 1952.  Overdevest is a Veriflora®-certified producer of plant materials located at 578 Bowentown Road, Bridgeton, NJ  08302.  This certification attests to product quality, environmental stewardship, exemplary labor relations, and community involvement. The nursery grows and sells nearly 2,000 varieties of plants in a production area of approximately 300 acres and sells a premium quality product to family owned garden centers primarily located in the Northeast and Mid-Atlantic states.  The lead WHD representative in this case complimented Overdevest for the size of its U.S. workforce and willingness to hire qualified U.S. referrals as part its H-2A commitment.

10.      Because of its difficulty in finding a sufficient number of qualified "order pullers" and its desire to employ legally authorized workers, Overdevest has participated in the H-2A program from 1999 until the present.   DOL has approved Overdevest job orders similar to those at issue in this case during this period.

11.      On September 25, 2013, Defendants issued a Determination Letter alleging that Overdevest violated its "corresponding employment" Rule, seeking the payment of back wages and civil money penalties.   Defendants' enforcement action is illegal and financially injurious to Overdevest.

12.      Defendants, R. ALEXANDER ACOSTA, in his official capacity as United States Secretary of Labor ("Acosta," "the Secretary," "the Department" or

"DOL"), BRYAN JARRETT, in his official capacity as Acting Administrator of the

United States Department of Labor's Wage & Hour Division ("the Administrator" or

"WHD"), and ROSEMARY LAHASKY ("ETA") (collectively, "Defendants"),

responsible for the oversight, administration, and enforcement of the H-2A visa program.

13.     Since Congress created a separate H-2A program in 1986, the Department

has promulgated a series of regulations that govern an employer's obligations in

connection with employing temporary or seasonal nonimmigrant agricultural workers,

issuing them in 1987, 2008, and the current rules in 2010.  This case arises from a Notice

of Determination issued by WHD on behalf of the Secretary's predecessor in that

position, with respect to Overdevest's participation in the H-2A program during the 2012

and 2013 growing seasons.

### III.     LEGAL BACKGROUND

14.     Congress created a temporary or seasonal nonimmigrant employment-

based visa program in the Immigration and Nationality Act of 1952 ("INA") to provide

U.S. employers access to foreign guest workers under certain conditions.  In 1986,

Congress passed the Immigration Reform and Control Act (IRCA), a major purpose of

which was to prohibit the employment of aliens in the U.S. without proper work

authorization and to sanction employers employing unauthorized workers and/or that

failed to verify work authorization.  8 U.S.C. § 1324a.  In IRCA, Congress bifurcated the

agricultural and nonagricultural temporary visa worker programs into the "H-2A" and

"H-2B" programs, respectively, referencing the statutory provision creating each separate

program.  8 U.S.C. § 1101(a)(15)(H)(ii)(a) and (b).

15.     In IRCA, Congress created specific conditions under which H-2A foreign visa holders could be admitted to the United States to engage in agricultural employment. 8 U.S.C. § 1188.  Pursuant to Section 1188(a)(1), an employer's petition to employ an alien as an H-2A worker may only be approved if the Secretary of Labor certifies that: (1) "there are not sufficient workers who are able, willing, and qualified, and who will be available at the time and place needed, to perform the labor or services involved in the petition, and" (2) "the employment of the alien in such labor or services will not adversely affect the wages and working conditions of workers in the United States similarly employed."

16.     Before an employer may participate in the H-2A program, the Department requires the employer to recruit U.S. workers, by a process specified by DOL, to work in the "occupation" described in the job order.  The Department will certify an employer to participate in the program if it determines that the employer does not actually have, or has not been provided with, sufficient referrals of qualified eligible individuals who have indicated their availability to perform such labor or services on the terms and conditions of a job offer which meets the requirements of the Secretary.  After the positive recruitment period, an employer must hire qualified U.S. workers who seek employment in the H-2A occupation until 50 percent of the period of the work contract has expired.  8 U.S.C. § 1188(c)(3); 20 CFR § 655.135(d) (2010).

17.     The Secretary allows employers to establish normal and accepted qualifications in the same or comparable "occupations."  8 U.S.C. § 1188(c)(3).  In this case, DOL approved a 3-month experience requirement, along with other qualifying

criteria, for the "order puller" occupation and certified Plaintiff for the 2012 and 2013 seasons.

18.     The concept of corresponding employment is not based on statutory language.  It is a creation of agency regulation.  The H-2A statute contains no provision on "corresponding employment" or in any manner supporting a construction that a U.S. worker who performs "any" task that an H-2A worker also performs is in "corresponding employment" and, thus, in equal job status and entitled to an identical wage rate.  On the contrary, the statute allows an employer to refuse to hire a U.S. worker who is not qualified for the approved occupation, by not meeting the experience and other criteria recognized as required by DOL in the job order.  Such a refusal to hire is not considered discrimination against U.S. workers or preference for H-2A workers over U.S. workers.  Thus, nor should a differentiation in wages for duties performed based on the experience.

19.     After the enactment of IRCA, the Department of Labor issued regulations in 1987 governing the H-2A temporary or seasonal agricultural visa program.  Among the requirements set forth in the 1987 Rule was that U.S. workers "in the occupation" for which the employer had been approved to hire H-2A workers must be accorded the same rate of pay and other benefits as those H-2A workers.  These U.S. workers were defined to be in "corresponding employment" with the H-2A workers for such purposes.  29 CFR Part 501.0; 52 Fed. Reg. 20524 (1987).  The 1987 Rule was in place for more than 20 years, during which time the Department, and WHD in particular, enforced that requirement by looking at the entirety of the job duties in the occupation described in the DOL-approved job order describing the H-2A workers' position including, but not

limited to, the skills, ability, and experience of each worker.  The Regional Agricultural

Coordinator for WHD, an acknowledged expert in the 1987, 2008, and 2010 H-2A rules

testified that, under the 1987 Rule, there would never have been a Notice of

Determination in this case.  In fact, Overdevest was investigated by Wage & Hour in

2007, under the 1987 Rule, and the Department did not cite the Nursery for a violation of

the "corresponding employment" Rule based on the division of job duties in the job order

like those at issue in this case.

20.     In 2008, the Department issued a short-lived rewrite of the H-2A rules.

The 2008 regulations changed the definition of "corresponding employment" to apply

only to U.S. workers who applied for the position covered by the H-2A job order in

response to the Department-required recruitment.  The 2008 Rule also expressly

permitted "incidental work" beyond the job duties described in the labor certification.  29

C.F.R. §§ 501.0 and 501.(20)(b)(1)(iv) (2008).

21.     Shortly after the change in administrations, the Department of Labor

issued new H-2A regulations, which took effect in February 2010.  This is the Rule that

was in place during the 2012 and 2013 growing seasons at issue in this case and that

remains in effect today.  The 2010 Rule explicitly rejected many of the changes made by

the 2008 Rule, including the "incidental work" authorization.  The new Rule, which is the

subject of this litigation, defines a worker in "corresponding employment" to be one who

"performs any work included in the job order, or in any agricultural work performed by

the H-2A workers."  29 C.F.R. § 501.3(a) (2010).  With respect to the definition of

"corresponding employment," the preamble to the 2010 Rule states that it "returns to the

requirements of the 1987 Rule" with one change "added to address the adverse impact on

U.S. workers when an H-2A employer engages H-2A workers in agricultural work

outside the scope of work found in the approved job order, including work impermissibly

performed outside the area of intended employment." 75 Fed. Reg. 6885 (Feb. 12, 2010).

Reiterating the Department's return to the 1987 Rule's formulation of "corresponding

employment," the preamble further states that "This does not require that every worker

on a farm be paid the H-2A required wage."

22.     The 2010 Rule also continues the "three-fourths guarantee," under which

the employer is required to offer each H-2A worker and U.S. worker in corresponding

employment at least three-fourths of the hours set forth in the job order, regardless of the

actual amount of work available during the season. 20 C.F.R. §655.122(i) (2010).

## IV.     FACTUAL BACKGROUND

23.     Since 1999, Overdevest has been certified by the Department to employ

workers in the occupation of "order puller."  This occupation requires substantial

experience for the job and involves workers being able to identify nearly 2,000 varieties

of plants by their Latin (botanical) names, select those having the proper quality, size,

and health from almost 300 acres of production area, match those plants to botanically

listed customer order sheets, properly load them onto the appropriate trucks to bring them

to those customers, and generate written reports about this work.

24.     Defendants certified Overdevest's 2012 and 2013 job orders that included

the "order puller" occupation.  The criteria for consideration for the occupation included:

at least 3-months experience in order pulling, sufficient plant familiarity, lifting

capability, as well as performing general nursery production tasks during the limited

periods during the season when customer demand reduced the need for order pulling.

U.S. workers who could not perform all of the duties described in the order puller

occupation were not qualified for the occupation and Overdevest was not required by the

H-2A statute or DOL's rules to hire them.

25.     For the 2012 and 2013 seasons, Overdevest petitioned the Department of

Labor for and received a labor certification for 55 H-2A "order pullers" for each year.  In

approving the labor certification, the Department concluded that there were not enough

U.S. workers "who are able, willing, and qualified" and available to do the work in

question, order pulling, and that employing these H-2A order pullers would not adversely

affect the wages and working conditions of those "similarly employed."  DOL has

approved Overdevest job orders similar to those in this case for nearly 20 years in a row,

and counting, from the 1999 through the current season.  The only change in the H-2A

regulations of which Overdevest was aware during this 20 year period prior to the audit

which was the basis of this case, was the 2008 Rule related to the calculation of the

adverse effect wage rate.

26.     The "order puller" occupation is skilled work requiring specific abilities

and qualifications, for which Overdevest pays the adverse effect wage rate – an

experienced wage, well above the median wage paid to production nursery workers by

competing nurseries operating in the same area.  The work performed by the "order

pullers" - both H-2A visa-holding foreign workers and experienced U.S. workers - is

fundamentally different than the "production worker" position that involves  entry level

tasks, other than order pulling, that do not require the same degree of experience, skill, or ability.

27.     Order pullers spend a majority of their time pulling orders – which entails: accurately identifying plant varieties, evaluating plant readiness, grading plants as to size, affirming plant health, and assuring quality to meet the exacting demands of customers who are charged a premium price in order for Overdevest to afford the higher costs of employing legal, qualified workers who are only sufficiently available through the H-2A program.  During periods of reduced customer demand, they perform some general nursery tasks, consistent with the DOL-approved occupation in the 2012 and 2013 job orders.  Under DOL's position, the performance of the lesser-skilled nursery tasks renders the order puller job differentiation moot so that it becomes equal to all of the other general jobs requiring the lesser-skilled workers to be paid at the same rate.  The 2010 "corresponding employment" Rule as applied in this case places Overdevest in a "Catch-22," acknowledged by WHD personnel.  If the general, lesser-skill nursery tasks that order pullers occasionally performed were not included in the job order, the performance of those tasks would violate the Rule and subject Overdevest to damages and sanctions.  Finally, if the order pullers did not perform such tasks during rare "down time," they would be idle these during occasional slow periods but owed wages for doing nothing under the "three-quarter guarantee" requirement of the very same rule.  The 2010 Rule provides no legal or practical avoidance of this dilemma that DOL's own personnel acknowledged to Overdevest and in the ALJ proceeding.  Surely this cannot be the desired policy objective of these rules.

28.     Under the 2012 and 2013 job orders, the "order pullers" - both H-2A and
U.S. workers performing the job - were paid at least the "adverse effect wage rate" (the
median gross earnings calculation referred to as AEWR) required under the H-2A
program, $10.34 in 2012 and $10.87 in 2013.  Production workers without the
experience, ability, and qualifications for the order puller position were paid at least
$9.00 in 2012 and $9.25 in 2013.  Emergency temporary workers were paid $9.00 an
hour during the very limited time they were employed in 2012.  In comparison, the 2012
NJ Department of Labor Prevailing Wage rate determination for nurseries in the southern
region of NJ was $8.90.  This median base wage calculation involved workers having a
full range of nursery experience (from beginner to very highly skilled) with base pay
rates ranging from $7.25 to $27.00.  This illustrates that not all nursery workers are the
same and that the AEWR paid by Overdevest to "order pullers" represented an
experienced wage appropriate for their qualifications.  It also shows that the wages paid
by Overdevest for production workers was more than fair for their entry level ("not
qualified") capabilities.  As is true in any other American employment circumstance,
Overdevest paid its workers commensurate with their ability.  Just as important, these
comparably higher pay rates did not put Overdevest at a competitive advantage – as
wrongfully contended by the Department in their ill-timed press release of 2016.

29.     The Department of Labor's Wage & Hour Division ("WHD") conducted
an investigation of Overdevest in 2013 for the 2012-2013 period.  During the
investigation, none of the WHD investigators determined whether the production and
emergency temporary workers for whom they seek back wages were qualified to perform

the order puller occupation.  To the contrary, after interviewing numerous employees, the

lead WHD investigator acknowledged to Mr. Overdevest that there was indeed a

difference between the capabilities of their "order pullers" and production workers.

Despite that, at the end of the investigation and later during the proceedings before the

ALJ, WHD asserted that the emergency temporary and production workers were equally

capable and should have been paid the same wage rate as the order pullers, resulting in

$92,984.22 in back wages and $50,400 in civil money penalties

30.     None of the production workers and emergency temporary workers for

whom DOL seeks back wages in this case were qualified for the "order puller

occupation," regardless of whether they were hired prior to the period of need described

in 2012 and 2013 job orders, during the period of need during those two seasons or were

incumbent employees during those two seasons.

31.     The effect of the Department's interpretation of and application to

Overdevest of the 2010 "corresponding employment" Rule is to require that every worker

on the nursery had to be treated as in corresponding employment and paid at least the

adverse effect wage rate. The application of the Rule in this case excluded only salaried

administrative and office staff, managers, and specialty and skilled positions paid at or

above the adverse effect wage.

32.      During the period from 1999 to 2012 Overdevest had been routinely

audited several times by WHD regarding its compliance with the H-2A program rules

and it was not found to have violated the 1987 "corresponding employment" Rule at any

point.  During this period of participation in the H-2A program until the issuance of the

Determination Letter that is the subject of this litigation, Overdevest relied on the

Department's interpretation of and application of the 1987 corresponding employment

Rule to its H-2A and U.S. workers.

## V.     PROCEDURAL HISTORY

33.     The Department issued Overdevest the Notice of Determination on

September 25, 2013, asserting that Overdevest had violated 20 C.F.R. § 655.122(l)

(2010) and 29 C.F.R. § 501(2010) by paying its production workers less than its order

pullers.  Overdevest timely requested a hearing before an Administrative Law Judge, as

required under 29 C.F.R. § 501.33 (2010.

34.     Plaintiff and the Defendant filed Cross-Motions for Summary Decision.

Plaintiff argued that the Department's interpretation of "corresponding employment" as

applied in this case was incorrect and that it ignored the statutory requirement that U.S.

workers in corresponding employment be able, willing and qualified to perform the

occupation in the job order certified by the Department.   Plaintiff also preserved its

argument that the Defendants' actions in this case were illegal under the Administrative

Procedure Act.  The Administrative Law Judge affirmed the Notice of Determination on

February 18, 2016.  The ALJ applied the literal definition of "corresponding

employment" in the 2010 Rule, declining to consider the Department's contrary

explanation of the Rule's intent in the contemporaneously issued preamble and found the

statutory requirement that U.S. workers must be able, willing and qualified for the H-2A

occupation was irrelevant to whether workers were in corresponding employment.  The

ALJ held that the statutory requirement of able, willing and qualified only applied to the

petition process.  Overdevest timely filed a petition for review to the Department's

Administrative Review Board, as required under 29 C.F.R. § 501.42 (2010).

35.     The Administrative Review Board (ARB) issued its Final Decision and

Order on March 15, 2018, affirming the Administrative Law Judge's February 2016

decision.  In upholding the ALJ's decision, the ARB refused to consider the

Department's unequivocal explanation of its 2010 Rule and its application inconsistent

with its stated intent and also affirmed the ALJ's conclusion that there was no need to

consider the statutory requirement that U.S. workers be qualified for the job being treated

in as corresponding employment, as it was irrelevant.    The decision of the

Administrative Review Board is a final agency action by the Department concerning this

matter.

36.     Both the Administrative Law Judge and the Administrative Review Board

state in their decisions that they are not legally authorized to invalidate the Department's

regulation.

## VI.    CLAIMS

### Count I

### The Department Has Misinterpreted the 2010 Rule With Respect to "Corresponding Employment" in this Specific Case (5 U.S.C. § 706(2)(A))

37.     Plaintiff incorporates by reference the allegations set forth in ¶¶ 1-36,

above.

38.     The Administrative Procedure Act does not permit an agency to act in a

manner that is arbitrary, capricious, or an abuse of discretion.

39.     In response to the 2008 "corresponding employment" Rule, issued by a predecessor Administration, to which it objected, the Department in 2010 issued a new Rule.  In the preamble to the new Rule, it explained why it objected to the 2008 Rule and how it was changing it.  It objected to the limitation in the 2008 definition of "corresponding employment" that only included U.S. workers newly hired during the contract period and eliminated that provision.  It also objected to the provision allowing H-2A workers to perform minor and incidental work outside of the job order without being considered "corresponding employment" and also eliminated that provision.

40.     Other than those two specific changes, the Department explained in its preamble to the 2010 Rule that its definition of "corresponding employment" was returning to the one in place under the 1987 Rule.   It explained that the only difference between the language of the 1987 Rule and the new Rule was the phrase "in any agricultural work performed by the H-2A workers."   The Department stated that phrase was added to eliminate the adverse effect on U.S. workers when H-2A workers work outside of the scope of the work found in the job order.  There is no dispute that, under the 1987 Rule definition of "corresponding employment," the Department did not and would not have brought an enforcement action against Plaintiff.  There is no dispute that Overdevest did not violate the 2010 "corresponding employment" Rule based on work outside the scope of the job order.  Rather, contrary to its articulated rationale, the Department found Overdevest in violation because an H-2A worker may have performed an activity that also was performed by U.S. production workers, albeit on a limited basis.

41.     Recognizing the breadth of the term "any agricultural work" without its articulated limitation to work performed outside of the scope of qualifications listed in the job order, the Department's preamble also specifically states that the 2010 Rule "does not require that every worker on a farm be paid the H-2A required wage."  In spite of this statement, that is precisely what the Department is requiring of Plaintiff in this case.

42.     Since the Department has affirmatively explained contemporaneously with the issuance of its 2010 H-2A Rule that the literal language of the Rule does not require the outcome directed by the Department's WHD, Administrative Law Judge, and Administrative Review Board, that outcome must be considered arbitrary, capricious, and an abuse of discretion.  Thus, it must be vacated, and the determination notice withdrawn in its entirety.

### Count II

**If the Department Correctly Followed the 2010 Rule, As Written, Then
That Rule Was Issued Inconsistent With Statutory Authority
(8 U.S.C. § 1188(a), (c) and 5 U.S.C. §§ 706(2)(A),(C))**

43.     Plaintiff incorporates by reference the allegations set forth in ¶¶ 1-42 above.

44.     The Administrative Procedure Act does not permit agencies to issue regulations in excess of or inconsistent with statutory authority.

45.     Congress, in creating the H-2A program, specifically tied the Department's consideration of the occupation for which H-2A workers could be hired to the skills, abilities, and qualifications of U.S. workers who might be available for the occupation.   Consistent with this, Congress allows employers seeking to use the H-2A

program to establish experience requirements for persons seeking a job in the H-2A

occupation, showing that they are qualified.  In this case, the Department approved

Overdevest's job order with experience and skill requirements for the "order puller"

occupation but did not determine whether the production workers and emergency

temporary workers whom it has determined to be in corresponding employment met

those requirements.  None of those for whom back wages are sought in this case were

qualified.

46.     By failing to adhere to or even acknowledge this statutory requirement in

defining "corresponding employment" in the 2010 Rule, to the extent that the rule

supports the Department's current interpretation of that concept, the Department acted in

excess of or inconsistent with its statutory authority under 8 U.S.C. § 1188(a), (c).

47.     As a result, the definition of "corresponding employment" in the 2010

Rule violates the Immigration and Nationality Act and the Administrative Procedure Act

and must be vacated.

**WHEREFORE, Plaintiff prays that the Court:**

48.     Enter an injunction, enjoining the Defendants from enforcing the decision

of the Administrative Review Board or commencing any action to collect the amounts

claimed in the Notice of Determination from Overdevest.

49.     Enter a declaratory judgment as to Counts I and II that the Department's

interpretation of its "corresponding employment" definition as to Overdevest or in general

is arbitrary, capricious, or an abuse of discretion or was issued in violation of the

Department's statutory authority, and enter a permanent injunction to prohibit Defendants from implementing that definition.

50.    Award Plaintiff its costs and expenses, including reasonable attorney's fees whether under the Equal Access to Justice Act or otherwise; and

51.    Award such further and additional relief as is just and proper.

Respectfully submitted,

s/ Christopher J. Schulte (DC500878)
Monte B. Lake (DC 925818)
C.J. LAKE LLC
525 Ninth Street, N.W., Suite 800
Washington, D.C. 20004
Tele: 202-465-3000; Fax: 202-347-3664
Email: cschulte@cj-lake.com
         mlake@cj-lake.com

Counsel for Plaintiff