## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| OVERDEVEST NURSERIES, L.P., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 18-1347 (RBW) |
| EUGENE SCALIA, in his official capacity as the Secretary of the United States Department of Labor, <u>et al.</u>,[1] | ) ) ) ) | |
| Defendants. | ) ) | |

## <u>MEMORANDUM OPINION</u>

The plaintiff, Overdevest Nurseries, L.P., brings this civil action against Eugene Scalia, in his official capacity as the Secretary of the United States Department of Labor (the "Department"); Cheryl Stanton, in her official capacity as the Administrator of the Wage and Hour Division of the Department (the "Wage and Hour Division"); and John P. Pallasch, in his official capacity as the Assistant Secretary for Employment and Training for the Department (collectively, the "defendants"), pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706 (2018).  <u>See</u> Complaint and Prayer for Declaratory and Injunctive Relief ("Compl." or the "Complaint") ¶¶ 12, 37–47.  Currently pending before the Court are (1) the Plaintiff's Motion for Summary Judgment ("Pl.'s Mot.") and (2) the Defendants' Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment ("Defs.' Mot.").  Upon careful consideration of the parties' submissions,[2] the Court concludes for the

---

[1] Eugene Scalia, Cheryl Stanton, and John P. Pallasch are substituted as the proper party defendants pursuant to Federal Rule of Civil Procedure 25(d).

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its

(continued . . . )

following reasons that it must deny the plaintiff's motion for summary judgment and grant the

defendants' cross-motion for summary judgment.

# I. BACKGROUND

## A. Statutory and Regulatory Framework

"The Immigration and Nationality Act ('INA'), 8 U.S.C. §[§] 1101[–1537 (2018)],

permits employers to hire temporary foreign workers 'to perform agricultural labor or services'

in the United States." Garcia v. Acosta, 393 F. Supp. 3d 93, 96 (D.D.C. 2019) (quoting 8 U.S.C.

§ 1101(a)(15)(H)(ii)(A)).

> [F]oreign workers hired to perform temporary agricultural work in the United States
> can be granted H-2A non-immigrant status  [("H-2A workers")] through a program
> that extends temporary visas to nonimmigrant foreign workers who "hav[e] a
> residence in a foreign country which [they] ha[ve] no intention of abandoning [and]
> who [are] coming [ ] to the United States to perform agricultural labor or services
> . . . of a temporary or seasonal nature"

(the "H-2A program"). United Farm Workers v. Solis, 697 F. Supp. 2d 5, 6 (D.D.C. 2010)

(alterations in original) (quoting 8 U.S.C. § 1101(a)(15)(H)(ii)(a)).  "An employer seeking to hire

H-2A [ ] workers must first seek certification from the Department[,]" Mendoza v. Perez, 754

F.3d 1002, 1007 (D.C. Cir. 2014), that

> (A) there are not sufficient workers who are able, willing, and qualified, and who
> will be available at the time and place needed, to perform the labor or services
> involved in the petition, and
> (B) the employment of the alien in such labor or services will not adversely affect
> the wages and working conditions of workers in the United States similarly
> employed[,]

---

(. . . continued)

decision: (1) the Defendants' Answer to Plaintiff's Complaint ("Answer"); (2) the Memorandum in Support of
Plaintiff's Motion for Summary Judgment ("Pl.'s Mem."); (3) the Defendants' Memorandum of Points and
Authorities in Support of Cross-Motion for Summary Judgment ("Defs.' Mem."); (4) the Memorandum of Law in
Opposition to Defendants' Cross-Motion for Summary Judgment and in Further Support of Plaintiff's Motion for
Summary Judgment ("Pl.'s Opp'n"); (5) the Defendants' Reply to Plaintiff's Opposition to Defendants' Cross
Motion for Summary Judgment ("Defs.' Reply"); (6) the Joint Appendix ("AR"); (7) the Plaintiff's Notice of
Supplemental Authority ("Pl.'s Not."); and (8) the Defendants' Response to Plaintiff's Notice of Supplemental
Authority ("Defs.' Resp.").

8 U.S.C. § 1188(a)(1). "An employer . . . that desires to apply for temporary employment certification of one or more nonimmigrant foreign workers must filed a completed Application for Temporary Employment Certification Form [(the 'certification form')] and, unless a specific exemption applies, a copy of Form ETA-790" (the "job order"), 20 C.F.R. § 655.130(a), which lists the "[j]ob qualifications and requirements[,]" id. § 655.122(b), and "[m]inimum benefits, wages, and working conditions[,]" id. § 655.122(c). "Only after obtaining the Department . . . certification may the employer petition the United States Citizenship and Immigration Services to classify a specific foreign worker as an H-2A [ ] worker." Mendoza, 754 F.3d at 1007.

Pursuant to Congress's delegation of authority, the Department promulgated regulations "setting out the procedures adopted by the Secretary to secure information sufficient to make factual determinations of[] . . . whether the employment of aliens for such temporary work will adversely affect the wages or working conditions of similarly employed [United States] workers." 20 C.F.R. § 655.0(a)(1). "The regulations . . . cover the enforcement of all contractual obligations . . . applicable to the employment of H-2A workers and workers engaged in corresponding employment[.]" 29 C.F.R. § 501.0. They require, inter alia, employers to pay H-2A workers and workers engaged in corresponding employment "a wage that is the highest of the [adverse effect wage rate],[3] the prevailing hourly wage or piece rate, the agreed-upon collecting bargaining wage, or the Federal or State minimum wage[.]" 20 C.F.R. § 655.120(a); see id. § 655.122(l). Such protections are extended to workers engaged in corresponding employment, as well as to H-2A workers, to ensure that "[t]he employment of . . . [an H-2A

---

[3] The adverse effect wage rage is "[t]he annual weighted average hourly wage for field and livestock workers (combined) in the States or regions as published annually by the [United States] Department of Agriculture [ ] based on its quarterly wage survey." 20 C.F.R. § 655.103(b).

worker] will not adversely affect the wages and working conditions of workers in the [United States] similarly employed."  8 U.S.C. § 1188(a)(1)(ii).

At issue in this case is the Department's definition of "corresponding employment."  In 1987, the Department promulgated regulations "cover[ing] the enforcement of all contractual obligations [ ] applicable to the employment of H-2A workers" and to "other workers . . . engaged in corresponding employment[.]"  Enforcement of Contractual Obligations for Temporary Alien Agricultural Workers Admitted Under Section 216 of the Immigration and Nationality Act, 52 Fed. Reg. 20,524, 20,527 (June 1, 1987) ("1987 Rule").  The 1987 Rule defined "other workers . . . engaged in corresponding employment" as "other workers hired by employers of H-2A workers in the occupations and for the period of time set forth in the job order approved by [the] [Employment and Training Administration ('ETA')[4]] as a condition for granting H-2A certification[.]"  Id.

"The Department's H-2A regulations remained largely unchanged from the 1987 Rule until 2008[,]" when "the Department significantly revised the[] regulations[.]"  Temporary Agricultural Employment of H-2A Aliens in the United States, 75 Fed. Reg. 6884, 6884 (Feb. 12, 2010) ("2010 Rule") (discussing the history of the Department's H-2A regulations).  The regulatory changes made in 2008 permitted H-2A workers to perform

> [o]ther work typically performed on a farm that is not specifically listed on the [certification form] and is minor (i.e., less than [twenty] percent of the total time worked on the job duties that are listed on the [certification form]) and incidental to the agricultural labor or services for which the H-2A worker was sought[,]

Temporary Agricultural Employment of H-2A Aliens in the United States; Modernizing the Labor Certification Process and Enforcement, 73 Fed. Reg. 77,110, 77,217 (Dec. 18, 2008)

---

[4] "The issuance and denial of labor certifications under 8 U.S.C. § 1188 has been delegated by the Secretary to [the] ETA, an agency within the [ ] Department . . . , who in turn has delegated that authority to the Office of Foreign Labor Certification[.]"  29 C.F.R. § 501.1(b).

("2008 Rule"), and also limited the definition of "workers . . . engaged in corresponding employment" to include only "United States [ ] workers newly hired by employers of H-2A workers in the same occupations as the H-2A workers during the period of time set forth in the labor certification approved by [the] ETA as a condition for granting H-2A certification," id. at 77,230 (emphasis added).

Then, in 2009, "the Department undertook a review of the policy decisions reflected in the 2008 [ ] Rule, specifically reviewing the worker protections afforded under that rule[,]" and again revised the regulations in 2010 pursuant to notice-and-comment rulemaking.  2010 Rule, 75 Fed. Reg. at 6884.  See generally Temporary Agricultural Employment of H-2A Aliens in the United States, 74 Fed. Reg. 45,906 (Sept. 4, 2009) ("2009 Notice").  The 2010 Rule adopted a more expansive definition of corresponding employment, defining it as "[t]he employment of workers who are not H-2A workers by an employer . . . in any work included in the job order, or in any agricultural work performed by the H-2A workers."  2010 Rule, 75 Fed. Reg. at 6979 (emphasis added).  This revision expanded the regulatory protections for workers engaged in corresponding employment by (1) removing the "newly hired" language, thereby entitling all workers engaged in corresponding employment, not just those newly hired, to H-2A protections and benefits, including the adverse effect wage rage, see id. at 6886, and (2) "requir[ing] that workers employed by an H-2A employer who perform the same agricultural work as the employer's H-2A workers be paid at least the H-2A required wage for that work[,]" id. at 6885.

## B.    Factual and Procedural History

### 1.    The Plaintiff's Participation in the H-2A Program

The plaintiff is "a large nursery and wholesale producer of plant material operating in

Southern New Jersey."  AR 158; <u>see</u> AR 656.  Ed Overdevest is the plaintiff's president.  <u>See</u> AR 657.

The plaintiff has participated in the H-2A program since 1999, <u>see</u> AR 158, by employing H-2A workers as order pullers, <u>see</u> AR 670, which are the "person[s] who would hold the paper, the clipboard, and essentially see to it that the correct plants, correct quantity [of plants], correct quality [of plants], [and plants with] no disease issues[] . . . [we]re pulled by the crew" for pick-up and delivery, AR 671.  "Each season, as part of its [H-2A order puller] applications, [the plaintiff] submitted a[] [certification form] and [a] [job order]" to the Department.  AR 158.  The plaintiff's 2012 and 2013 job orders required, <u>inter alia</u>, that order pullers have certain specialized experience, such as being "[f]amiliar with a range of proper plant names and sufficiently familiar with plant identifications so as to accurately and timely pull and load orders on delivery trucks[,]" AR 313, 338, and having at least "three months [of] recent nursery experience[,]" AR 313; <u>see</u> AR 338.  In addition to the specialized order puller tasks, the 2012 and 2013 job orders included a "catch-all" provision, AR 453, providing that order pullers would "[p]erform[] other general nursery tasks as necessary[,]" AR 319, 338.  Mr. Overdevest explained that this catch-all provision was designed to "allow for [order pullers] to work in lesser[-]skilled tasks, when they[] [were] not busy pulling orders or other higher[-]order tasks." AR 454.

"For the 2012 and 2013 growing seasons, [the plaintiff] applied for and was certified by the Department . . . for [fifty-five] H-2A workers each year for the order puller position." AR 158 (internal quotation marks omitted).  During that time, the plaintiff also employed sixty-nine lesser-skilled domestic workers (the "domestic workers"), <u>see</u> AR 160, who were paid less than the adverse effect wage rage, <u>see</u> AR 430–31.  "[W]hile the H-2A work[ers] [hired by the

plaintiff for the 2012 and 2013 growing seasons] spen[t] the majority of their time performing higher[-]skilled tasks, [ ] they occasionally perform[ed] some of the lesser-skilled duties performed by the domestic workers."  AR 159 (internal quotation marks omitted); see AR 446–47 (Mr. Overdevest testifying that the H-2A workers would perform "lesser[-]skilled jobs" when "things [were] slow"); AR 680–81 (Mr. Overdevest testifying that the H-2A workers typically did not engage in higher-skilled order pulling tasks during their slower Friday and Saturday work shifts).  And, while the domestic workers hired by Overdevest for the 2012 and 2013 growing seasons "did not possess the skill or ability to perform the higher-skilled order pulling tasks[,]" "every domestic worker from 2012 and 2013 engaged in activities that [ ] [were] listed in the job orders."  AR 159 (internal quotation marks omitted); see AR 455–57 (Mr. Overdevest testifying that the domestic workers performed at least some of the duties listed in the 2012 and 2013 job orders).

## 2.    The Plaintiff's Compliance with the H-2A Program Requirements

In 2007, the Wage and Hour Division conducted an investigation into the plaintiff's compliance with the 1987 Rule (the "2007 investigation").  See AR 160, 749–50.  The issue of "whether there was a violation by . . . [the plaintiff] for not paying [domestic] workers engaged in corresponding employment [the] same as [the] H-2A workers" was "raised and the possibility of it being a violation of the [1987] [R]ule[] . . . was raised, but no determination was made to charge a violation at the time."  AR 750; see AR 160.  Following the conclusion of the 2007 investigation, John Kelly, the then-District Director of the Wage and Hour Division, sent an e-mail to Mr. Overdevest informing him that the Wage and Hour Division was closing the 2007 investigation on the ground that the Wage and Hour Division "d[id] not have guidance on"

corresponding employment and "d[i]d not wish to use [ ] [the plaintiff's case] as a test case to establish such guidance[.]"  AR 554; see AR 750–51.

In 2013, the Wage and Hour Division conducted an investigation into the plaintiff's compliance with the 2010 Rule during the time period beginning March 31, 2012, and ending on August 31, 2013 (the "2013 investigation").  See AR 159, 419.  On September 25, 2013, the Wage and Hour Division concluded its 2013 investigation and determined that the plaintiff failed to comply with the 2010 Rule and owed $72,193.89 in unpaid wages to its domestic workers and $50,400.00 in "civil money penalties[.]"  AR 419.  On October 27, 2015, the Department revised its unpaid wages calculation and concluded that the plaintiff owed $92,984.22 in unpaid wages to its domestic workers.  See AR 177.

The plaintiff thereafter sought administrative review of the Department's determination. See AR 4.  On February 18, 2016, an administrative law judge granted the Department's motion for summary judgment and denied the plaintiff's cross-motion for summary judgment.  See AR 156.  On March 15, 2018, two administrative appeals judges affirmed the administrative law judge's decision.  See AR 16.

After the conclusion of the administrative review proceedings, on June 8, 2018, the plaintiff initiated this civil action against the defendants, see Compl. at 1, alleging that (1) "the Department has misinterpreted the 2010 Rule with respect to 'corresponding employment' in this specific case" ("Count One"), id. at 16 (capitalization removed), and (2) "if the Department correctly followed the 2010 Rule, as written, then that rule was issued inconsistent with statutory authority" ("Count Two"), id. at 18 (capitalization removed).  The parties thereafter filed their cross-motions for summary judgment, see generally Pl.'s Mot; Defs.' Mot., which are the subjects of this Memorandum Opinion.

## II.      STANDARD OF REVIEW

A moving party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In the APA context, summary judgment is the mechanism for deciding whether as a matter of law an agency action is supported by the administrative record and is otherwise consistent with the APA standard of review.  See, e.g., Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415–16 (1971).  But, due to the limited role a district court plays in reviewing the administrative record, the typical summary judgment standards set forth in Federal Rule of Civil Procedure 56 are not applicable.  See Stuttering Found. of Am. v. Springer, 498 F. Supp. 2d 203, 207 (D.D.C. 2007).  Rather, "[u]nder the APA, it is the role of the agency to resolve factual issues to arrive at a decision that is supported by the administrative record, whereas 'the function of the district court is to determine whether or not as a matter of law the evidence in the record permitted the agency to make the decision it did.'"  Id. (quoting Occidental Eng'g Co. v. Immigration & Naturalization Serv., 753 F.2d 766, 769–70 (9th Cir. 1985)).  In other words, "when a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal[,]" and "[t]he 'entire' case on review is a question of law." Am. Bioscience, Inc. v. Thompson, 269 F.3d 1077, 1083 (D.C. Cir. 2001).

The APA "sets forth the full extent of judicial authority to review executive agency action for procedural correctness."  Fed. Commc'ns Comm'n v. Fox Television Stations, Inc., 556 U.S. 502, 513 (2009).  It requires a district court to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[,]" 5 U.S.C. § 706(2)(A); "contrary to constitutional right, power, privilege or immunity[,]" id. § 706(2)(B); or "in excess of statutory jurisdiction,

authority, or limitations, or short of statutory right[,]" id. § 706(2)(C).  "The scope of review under the 'arbitrary and capricious' standard is narrow and a [district] court is not to substitute its judgment for that of the agency."  Motor Vehicles Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).  "Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation of its action including a 'rational connection between the facts found and the choice made.'"  Id. (quoting Burlington Truck Lines v. United States, 371 U.S. 156, 168 (1962)).  However, the district "[c]ourt[] 'will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'"  Pub. Citizen, Inc. v. Fed. Aviation Admin., 988 F.2d 186, 197 (D.C. Cir. 1993) (quoting Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc. 419 U.S. 281, 286 (1974)).

## III.   ANALYSIS

The plaintiff argues that it is entitled to summary judgment on Count One of the Complaint because the Department's "interpretation and application of the 2010 . . . Rule in this specific case is arbitrary and capricious under the APA[,]" Pl.'s Mem. at 38 (capitalization removed), and on Count Two of the Complaint because "as written and applied to [the] plaintiff, the 2010 . . . Rule is inconsistent with statutory authority and illegal[,]" id. at 28 (capitalization removed).  The defendants respond that they are entitled to summary judgment on Count One because the Department "reasonably concluded that [the plaintiff's] domestic [ ] workers were engaged in corresponding employment with its H-2A workers[,]" Defs.' Mem. at 29 (capitalization removed), and on Count Two because the 2010 Rule "is entitled to substantial deference because it is a reasonable interpretation of the H-2A statute's requirements[,]" id. at 23.  Because Count Two addresses the reasonableness of the 2010 Rule generally, whereas Count One addresses the reasonableness of the Rule as applied to the plaintiff, the Court

concludes that it is appropriate to begin its analysis by first addressing Count Two and then addressing Count One.

## A.    Count Two

As to Count Two of the Complaint, the plaintiff argues that "[t]he 2010 . . . [R]ule is inconsistent with and directly contradicts Congress'[s] explicit wording and clear intent in 8 U.S.C. § 1188(a)(1) and (c)(3)."  Pl.'s Mem. at 28.  The defendants respond that the 2010 Rule is a reasonable interpretation of 8 U.S.C. § 1188(a)(1) because the Department

> provided considerable explanation for why the agency adopted the current regulatory definition of "corresponding employment,["] and the 2010 [ ] [R]ule is a reasonable interpretation of [the] [Department's] statutory directive to ensure that the employment of H-2A workers does not "adversely affect" the wages and working conditions of workers in the United States "similarly employed."

Defs.' Mem. at 18.

As a preliminary matter, the Court must determine the appropriate standard under which to evaluate the reasonableness of the 2010 Rule, which interprets 8 U.S.C. § 1188(a)(1).  See Mendoza, 754 F.3d at 1021–22 (explaining that 8 U.S.C. § 1188(a)(1) "explicitly envisions implementing regulations that will clarify the meaning and application of its provisions").  "In reviewing an agency's interpretation of the laws it administers, [a reviewing court] appl[ies] the principles of Chevron[,] U.S.A.[,] Inc. v. Natural Resources Defense Council[, Inc.,] 467 U.S. 837 (1984)."  Mount Royal Joint Venture v. Kempthorne, 477 F.3d 745, 754 (D.C. Cir. 2007).  "If the agency enunciates its interpretation through notice-and-comment rule-making or formal adjudication, [the reviewing court] give[s] the agency's interpretation Chevron deference."  Id.  Here, the Department promulgated the 2010 Rule pursuant to notice-and-comment rulemaking.  See 2010 Rule, 75 Fed. Reg. at 6884.  See generally 2009 Notice, 74 Fed. Reg. at 45,906.

Accordingly, the Court must proceed in accordance with the two-part test articulated in

Chevron.[5]

"Pursuant to Chevron [s]tep [o]ne, if the intent of Congress is clear, the reviewing court

must give effect to the unambiguously expressed intent."  Animal Legal Def. Fund v. Perdue,

872 F.3d 602, 610 (D.C. Cir. 2017).  In determining whether "Congress has directly spoken to

the precise question at issue," Nat'l Treasury Emps. Union v. Fed. Labor Relations Auth., 414

F.3d 50, 57 (D.C. Cir. 2005), a reviewing court "us[es] the traditional tools of statutory

construction[,]" Cal. Indep. Sys. Operator Corp. v. Fed. Energy Reg. Comm'n, 372 F.3d 395,

400 (D.C. Cir. 2004), including "evaluation of the plain statutory text at issue, the purpose and

structure of the statute as a whole, while giving effect, if possible, to every clause and word of a

statute, and—where appropriate—the drafting history[,]" Pharm. Research & Mfrs. of Am. v.

Fed. Trade Comm'n, 44 F. Supp. 3d 95, 112 (D.D.C. 2014), aff'd, 790 F.3d 198 (D.C. Cir.

2015).  However, "[i]f Congress has not directly addressed the precise question at issue, the

reviewing court proceeds to Chevron [s]tep [t]wo." Ass'n of Private Sector Colls. & Univs. v.

Duncan, 681 F.3d 427, 441 (D.C. Cir. 2012).  At step two, "the [reviewing] court defers to the

[agency]'s interpretation so long as it is 'based on a permissible construction of the statute.'"

Nat'l Treasury Emps. Union, 414 F.3d at 57 (quoting Chevron, 467 U.S. at 842–43).  The Court

will first address Chevron step one, and then, if necessary, address Chevron step two.

---

[5] The Court notes, and the parties agree, see Pl.'s Mem. at 37; Defs.' Mem. at 19 n.10, that Chevron, rather than
Auer, deference is the appropriate framework under which to evaluate the 2010 Rule—the Department's
interpretation of 8 U.S.C. § 1188(a)(1)—because Chevron deference implicates issues "raised in connection with
judicial deference to agency interpretations of statutes enacted by Congress[,]" whereas Auer deference implicates
"[i]ssues surrounding judicial deference to agency interpretations of their own regulations[,]" Kisor v. Wilkie, 139 S.
Ct. 2400, 2425 (2019) (Roberts, C.J., concurring).

1.      **<u>Chevron</u> Step One**

As to <u>Chevron</u> step one, the plaintiff argues that "[i]n creating the H-2A program,

Congress spoke clearly and unambiguously on the subject[,]" Pl.'s Mem. at 29, and

"unambiguously express[ed] its intent that the Department . . . would consider the similarity of

employment and relative ability and qualifications of workers in the specific occupation certified

compared with those outside that position[,]" <u>id.</u> at 30.  In support of this position, the plaintiff

argues that, in 8 U.S.C. § 1188(a)(1), Congress clearly defined the terms "able, willing, and

qualified" and "similarly employed" "consistent with [the] [p]laintiff's arguments[,]" <u>id.</u> at 32

(capitalization removed); <u>see id.</u> at 32–34, and that "the plain meaning of the words 'able,

willing, and qualified' and 'similarly employed' negates [the] defendants' argument that the [ ]

statute is ambiguous[,]" Pl.'s Opp'n at 6 (capitalization removed).  The defendants respond that

"the statute does not . . . define 'adverse effect' on 'similarly employed' domestic workers[,]"

Defs.' Mem. at 20, and that "[i]n light of these ambiguities, the [District of Columbia] Circuit

and another district court in this jurisdiction have long recognized that Congress did not define

'adversely affect' or 'similarly employed' at 8 U.S.C. § 1188(a)(1)(B), leaving it to [the]

[Department's] discretion to determine how to ensure that the hiring of H-2A workers meets the

statutory standard[,]" <u>id.</u> at 21 (citing <u>Am. Fed. of Labor & Cong. of Indus. Orgs. (AFL-CIO) v.

Dole</u>, 923 F.2d 182, 184 (D.C. Cir. 1991), and <u>United Farm Workers</u>, 697 F. Supp. 2d at 9).

"Section 1188(a)(1) establishes the INA's general mission; Congress left it to the

Department . . . to implement that mission through the creation of specific substantive provisions

. . . . The statute explicitly envisions implementing regulations that will clarify the meaning and

application of its provisions."  <u>Mendoza</u>, 754 F.3d at 1021–22; <u>cf.</u> <u>AFL-CIO</u>, 923 F.2d at 184

("Congress expressly incorporated the prior regulatory requirement that employing foreign

workers would not adversely affect the wages and working conditions of workers in the United States similarly employed, as part of [the] [Immigration Reform and Control Act of 1986's] amendments of [the] INA governing temporary worker (or H-2A) visas.  Congress did not, however, further define adverse effect and left it in the Department's discretion how to ensure that the importation of farmworkers met the statutory requirements." (footnote omitted) (citations and internal quotation marks omitted) (citing 8 U.S.C. § 1188(a)).  "[A]lthough the plaintiff[] state[s] that the phrase[s] ['able, willing, and qualified' and] 'similarly employed" ha[ve] [ ] precise statutory meaning[s] leaving no room for ambiguity, . . . the [C]ourt [is not] aware of any such definition[s] in either the statute or the applicable case law."  United Farm Workers, 697 F. Supp. 2d at 9.  "Thus, . . . Congress has not offered [ ] sufficient definition[s] to end the [C]ourt's analysis at this point.  The [C]ourt, accordingly, moves to the second step of the Chevron analysis."  Id.

2.      **Chevron Step Two**

As to Chevron step two, the plaintiff argues that "the question for the [C]ourt is whether the agency's answer is based on a permissible construction of statute[,]" Pl.'s Mem. at 36 (internal quotation marks omitted), and that to make this showing, "the Department . . . would [ ] clearly need to prove to the Court that its 2010 interpretation of corresponding employment is based on a permissible construction of [§] 1188, which it clearly does not[,]" id. at 37 (internal quotation marks omitted).  Specifically, the plaintiff argues that its interpretation of the definition of corresponding employment—i.e., that only domestic workers who are "able, willing, and qualified" to perform all work included in the order puller job order can be engaged in corresponding employment, and therefore entitled to the same adverse effect wage rage to which H-2A workers are entitled, see Pl.'s Mem. at 28—is the only permissible construction of the

statute.  It further argues that the Department's conflicting interpretation of corresponding

employment articulated in the 2010 Rule—i.e., that any domestic workers engaged "in any work

included in the job order, or in any agricultural work performed by the H-2A workers[,]" 29

C.F.R. § 501.3 (emphasis added), can be engaged in corresponding employment—is inconsistent

with the statute, see Pl.'s Mem. at 30–31.  The defendants respond that "[t]he [ ] 2010 Rule is a

reasonable construction of the statute's requirement that the hiring of H-2A workers not

adversely affect similarly employed domestic workers and, therefore, is entitled to substantial

deference."  Defs.' Mem. at 28.

"An agency receives deference at Chevron step two if it has 'offered a reasoned

explanation for why it chose [its] interpretation."  Athenex Inc. v. Azar, 397 F. Supp. 3d 56, 63

(D.D.C. 2019) (alteration in original) (quoting Village of Barrington, Ill. v. Surface Transp. Bd.,

636 F.3d 650, 660 (D.C. Cir. 2011)), appeal dismissed sub nom., Athenex Pharma Sols., LLC v.

Azar, No. 19-5223, 2019 WL 5394642 (D.C. Cir. Oct. 1, 2019).

> As in step one, this requires application of the traditional tools of statutory
> interpretation, including reviewing the text, structure, and purpose of the statute.
> The difference at this stage, however, is the criteria—i.e., whereas step one asked
> whether Congress require[d] a certain interpretation, step two asks whether the
> same statutory text, history, and purpose permit the interpretation chosen by the
> agency.

Ass'n for Cmty. Affiliated Plans v. U.S. Dep't of Treasury, 392 F. Supp. 3d 22, 42 (D.D.C.

2019) (alteration in original) (citation and internal quotation marks omitted).  "[I]n order to

withstand judicial scrutiny, the [agency's] actions need not be the only permissible construction

that [it] might have adopted, nor may the [C]ourt substitute its own judgment for that of the

[agency]."  United Farm Workers, 697 F. Supp. 2d at 11 (second alteration in original) (citation

and internal quotation marks omitted).  Rather, in determining whether the agency's policy is

reasonable under Chevron step two, "it suffices that the new policy is permissible under the

statute, that there are good reasons for it, and that the agency <u>believes</u> it to be better, which the conscious change of course adequately indicates."  <u>Fox Television Stations, Inc.</u>, 556 U.S. at 515.

As a preliminary matter, the Court finds that, contrary to the plaintiff's assertion, the structure of 8 U.S.C. § 1188(a)(1) does not compel the conclusion that the Department's definition of corresponding employment in the 2010 Rule is contrary to the statute.  The plaintiff argues that its proffered interpretation of corresponding employment is the only permissible interpretation because "the statutory language [in 8 U.S.C. § 1188(a)(1)] is conjunctive[,]" Pl.'s Opp'n at 12, and therefore paragraphs (A) and (B) must be read together so that only "able, willing, and qualified" domestic workers are "similarly employed" and therefore, engaged in corresponding employment, <u>see</u> Pl.'s Mem. at 30.  However, the plaintiff's interpretation "runs afoul of the usual rule that when the legislature uses certain language in one part of the statute and different language in another, the [C]ourt assumes different meanings were intended."  <u>Sosa v. Alvarez-Machain</u>, 542 U.S. 692, 712 n.9 (2004).  <u>Compare</u> 8 U.S.C. § 1188(a)(1)(A) (describing "workers who are able, willing, and qualified"), <u>with</u> <u>id.</u> § 1188(a)(1)(B) (describing "workers in the United States similarly employed").

Moreover, a "review[] [of] the text, structure, and purpose" of 8 U.S.C. § 1188(a)(1) demonstrates that "the interpretation [of corresponding employment] chosen by the [defendants]" is "permi[ssible]" under <u>Chevron</u> step two.  <u>Ass'n for Cmty. Affiliated Plans</u>, 392 F. Supp. 3d at 42.  The Circuit observed in <u>Mendoza</u> that

> [t]he clear intent of this provision is to protect American workers from the deleterious effects the employment of foreign labor might have on domestic wages and working conditions.  In particular, Congress was concerned about (1) the American workers who would otherwise perform the labor that that might be given to foreign workers, and (2) American workers in similar employment whose wages

and working conditions could be adversely affected by the employment of foreign
laborers.

754 F.3d at 1017; see Int'l Union of Bricklayers & Allied Craftsmen v. Meese, 761 F.2d 798,

805 (D.C. Cir. 1985) ("The legislative history of th[e] [INA] (as initially passed) clearly evinces

a congressional purpose to keep American labor stalwart in the face of foreign competition to the

United States."). The 2010 Rule's definition of corresponding employment is consistent with

congressional "intent . . . to protect American workers from the deleterious effects the

employment of foreign labor might have on domestic wages and working conditions[,]"

Mendoza, 754 F.3d at 1017, because it specifically "require[s] [United States] workers to be paid

the same wages and conditions that H-2A workers receive when performing the same work[,]"

2010 Rule, 75 Fed. Reg. at 6886. Indeed, as the Department explained in the preamble to the

2010 Rule, the addition of the phrase "or in any agricultural work performed by the H-2A

workers" in the 2010 Rule's definition of corresponding employment

> was added to address the adverse impact on [United States] workers when an H-2A
> employer engages H-2A workers in agricultural work outside the scope of work
> found in the approved job order, including work impermissibly performed outside
> the area of intended employment. Domestic workers should not be disadvantaged
> when an employer violates the terms and conditions of the H-2A job order.

Id. (emphasis added); see 2009 Notice, 74 Fed. Reg. at 45,911 ("proposing to define

'corresponding employment' [ ] in keeping with the statutory language mandating that the

importation of H-2A workers not adversely impact the wages and working conditions of workers

similarly employed in the [United States]").

Here, "the [C]ourt determines that the [Department] 'has offered an explanation that it

reasonable and consistent with the regulation's language and history,' thus supporting the

[Department's] objectives." United Farm Workers, 697 F. Supp. 2d at 10 (quoting Trinity

Broad. of Fla., Inc. v Fed. Commc'ns Comm'n, 211 F.3d 618, 627 (D.C. Cir. 2000)). The Court

therefore concludes that the Department's definition of corresponding employment as articulated in the 2010 Rule is a reasonable interpretation of 8 U.S.C. § 1188(a)(1) and is entitled to substantial deference under <u>Chevron</u> step two.  Accordingly, summary judgment is awarded to the defendants on Count Two of the Complaint.

**B.      Count One**

As to Count One of the Complaint, the plaintiff argues that the Department's "interpretation and application of th[e] 2010 . . . [R]ule in this specific case is arbitrary and capricious under the APA" because "the Department doubly subverted H-2A employers' reasonable reliance on the longstanding corresponding employment definition, both from what the Department had <u>done</u> from 1987–2010 and what the Department had <u>said</u> in 2010 when issuing the rule."  Pl.'s Mem. at 39.  Specifically, the plaintiff argues that the Department's interpretation of the 2010 Rule is arbitrary and capricious because the Department changed course without offering a reasoned explanation for the change of its prior position, <u>see</u> Pl.'s Mem. at 39, and that the Department's application of the 2010 Rule to the plaintiff is arbitrary and capricious because the "[p]laintiff and other H-2A employers cannot comply with the corresponding employment rule without violating other H-2A rules," <u>id.</u> at 41.  The defendants respond that the Department "reasonably construed and applied the 2010 'corresponding employment' rule to [the] [p]laintiff's case[.]"  Defs.' Mem. at 18 (internal quotation marks omitted).

**1.      Whether the Department's Policy Changes in the 2010 Rule are Arbitrary and Capricious**

The plaintiff first argues that the Department's interpretation of the 2010 Rule is arbitrary and capricious because the Department changed course without offering a reasoned explanation for the change of its prior position.  <u>See</u> Pl.'s Mem. at 39.  The defendants respond that

as . . . history makes clear, [the] [Department] has never defined corresponding employment to require that a domestic worker perform, or be able, willing[,] and qualified to perform, all of the work included on the job order.  Instead, [the] [Department] has consistently required that domestic workers who perform any work included in the job order be paid the H-2A wage rate for that time.

Defs.' Mem. at 33–34.

"A central principle of administrative law is that, when an agency decides to depart from decades-long past practices and official policies, the agency must at a minimum acknowledge the change and offer a reasoned explanation for it."  Am. Wild Horse Pres. Campaign v. Perdue, 873 F.3d 914, 923 (D.C. Cir. 2017).  "For that reason, [the Circuit] ha[s] long held that '[a]n agency may not depart from a prior policy sub silentio[.]'"  Id. (third and fourth alterations in original) (quoting U.S. Telecom Ass'n v. Fed. Commc'ns Comm'n, 825 F.3d 674, 707 (D.C. Cir. 2016)). "The analysis of disputed agency action under Chevron [s]tep [t]wo and arbitrary and capricious review is often 'the same, because under Chevron [s]tep [t]wo, [the court asks] whether an agency interpretation is arbitrary and capricious in substance."  Braeburn Inc. v. U.S. Food & Drug Admin., 389 F. Supp. 3d 1, 23 (D.D.C. 2019) (fifth alteration in original) (quoting Agape Church, Inc. v. Fed. Commc'ns Comm'n, 738 F.3d 397, 410 (D.C. Cir. 2013)).

Here, relevant to the plaintiff's challenge, the only policy changes that the Department implemented in the 2010 Rule were to remove the 2008 Rule's allowance for "minor . . . and incidental" agricultural work by H-2A workers not listed in the job order, 73 Fed. Reg. at 77,212, and to require that H-2A employers pay domestic workers the adverse effect wage rage for "any agricultural work performed by the H-2A workers[,]" even if the agricultural work is not listed in the job order, 75 Fed. Reg. at 6979 (emphasis added).  As the Department "is charged with protection of workers" "[i]n administering the labor certification program," NAACP, Jefferson Cty. Branch v. Donovan, 566 F. Supp. 1202, 1206 (D.D.C. 1983), it was free to make these

policy changes, provided that it offered a reasoned explanation for the changes, see Am. Wild Horse Pres. Campaign, 873 F.3d at 923.  Here, the Department offered the following explanation:

> This language was added to address the adverse impact on [United States] workers when an H-2A employer engages H-2A workers in agricultural work outside the scope of work found in the approved job order, including work impermissibly performed outside the area of intended employment.  Domestic workers should not be disadvantaged when an employer violates the terms and conditions of the H-2A job order.  This does not require that every worker on a farm be paid the H-2A required wage.  It does, however, require that workers employed by an H-2A employer who perform the same agricultural work as the employer's H-2A workers be paid at least the H-2A required wage for that work.

2010 Rule, 75 Fed. Reg. at 6885.  As discussed above, see Part III.A.2, supra, the Court has already concluded that this explanation "is reasonable and consistent with the regulation's language and history[,]" United Farm Workers, 697 F. Supp. 2d at 10 (quoting Trinity, 211 F.3d at 627).

Moreover, to the extent that the plaintiff argues that the 2010 Rule otherwise represents a policy departure from the 1987 Rule, see Pl.'s Mem. at 42–43, the Court rejects this argument. As the defendants correctly point out, the Department "has never defined corresponding employment to require that a domestic worker perform, or be able, willing[,] and qualified to perform, all of the work included on the job order[,]" Defs.' Mem. at 33; cf. 2010 Rule, 75 Fed. Reg. at 6979 (in defining corresponding employment, making no reference to domestic workers' qualifications); 2008 Rule, 73 Fed. Reg. at 77,230 (same); 1987 Rule, 52 Fed. Reg. at 20,527 (same), and has "consistently required that domestic workers who perform any work in the job order be paid the H-2A wage rate for that time[,]" Defs.' Mem. at 33–34; see, e.g., 2008 Rule, 73 Fed. Reg. at 77,195 ("[A]n employee who is hired to perform any work covered by the job order during the contract period is entitled to all the material terms and conditions of the job order or

work contract for the corresponding employment, but not for any time spent in work not covered by the job order or work contract." (emphasis added)).

The Court concludes that, to the extent the 2010 Rule "depart[ed] from . . . official [Department] policies," Am. Wild Horse Pres. Campaign, 873 F.3d at 923, by removing the 2008 Rule's allowance for "minor . . . and incidental" agricultural work by H-2A workers not listed in the job order, 73 Fed. Reg. at 77,212, and requiring that domestic workers be paid the adverse effect wage rage for "any agricultural work performed by the H-2A workers[,]" 2010 Rule, 75 Fed. Reg. at 6979 (emphasis added), the Department has sufficiently "acknowledge[d] the change[s] and offer[ed] a reasoned explanation" for them, Am. Wild Horse Pres. Campaign, 873 F.3d at 923.  Therefore, the Department's policy changes are not arbitrary and capricious. Accordingly, summary judgment is awarded to the defendants on Count One of the Complaint, to the extent that Count One alleges that the Department's policy changes in the 2010 Rule are arbitrary and capricious.

### 2.     Whether the Department's Application of the 2010 Rule to the Plaintiff is Arbitrary and Capricious

The plaintiff next argues that the Department's application of the 2010 Rule to the plaintiff is arbitrary and capricious because the "[p]laintiff and other H-2A employers cannot comply with the corresponding employment rule without violating other H-2A rules," and "[a] rule that is a '[c]atch[-]22' by making it impossible for the regulated [ ] community [to] comply with the program's integrated regulatory framework is inherently unreasonable and thus arbitrary and capricious under the APA."  Pl.'s Mem. at 41.  The defendants respond that "[c]omplying with all of the H-2A program's requirements[] [ ] is entirely feasible and many employers succeed in doing so every year."  Defs.' Mem. at 35.  They argue that the plaintiff's purported inability to comply with the 2010 Rule is based not on the way the 2010 Rule is drafted, but

rather on the plaintiff's "business decision to approach its obligations under the H-2A program by drafting a broad job order so that its H-2A workers could engage in any work necessary on the nursery when they were not engaged in more skilled tasks." Id. at 36.

Contrary to the plaintiff's position, the Court concludes that complying with the terms of the 2010 Rule is not "impossible[.]" Pl.'s Mem. at 41. The plaintiff admits that it purposefully drafted a broad job order to allow the H-2A workers to perform unskilled agricultural work during slow times. See AR 454 (Mr. Overdevest testifying that the catch-all provision in the job orders was designed to "allow for [order pullers] to work in lesser[-]skilled tasks, when they[] [were] not busy pulling orders or other higher[-]order tasks"). Thus, the plaintiff can easily avoid noncompliance with the 2010 Rule by drafting a narrower job order. As the defendants correctly point out,

> an employer seeking foreign workers to perform certain highly skilled tasks that may not keep the worker busy at all times may choose to draft more narrowly tailored job orders, limited to those tasks and time periods that the employer cannot, in fact, find domestic workers to perform. Should the employer . . . find that it does not have sufficient hours to offer the worker to meet the three-quarters guarantee,[6] the employer still may satisfy its obligation under the regulations by paying the worker for those hours[.]

Defs.' Mem. at 35–36. Accordingly, the Court does not find that the application of the 2010 Rule to the plaintiff is arbitrary and capricious. Thus, summary judgment is awarded to the defendants on Count Two of the Complaint, to the extent that Count One alleges that the defendants' application of the 2010 Rule to the plaintiff is arbitrary and capricious.

And, because the Court concludes that the 2010 Rule is not arbitrary and capricious, either as to the Department's policy changes in the 2010 Rule or in its application of the 2010

---

[6] The "three-fourths guarantee" provides that an H-2A "employer must guarantee to offer the [H-2A] worker employment for a total number of work hours equal to at least three-fourths of the workdays . . . specified in the work contract or in its extensions, if any." 20 C.F.R. § 655.122(i)(l).

Rule to the plaintiff, summary judgment is awarded to the defendants on Count One of the Complaint.

### IV.   CONCLUSION

For the foregoing reasons, the Court concludes that the 2010 Rule is a reasonable application of 8 U.S.C. § 1188(a)(1).  The Court also concludes that the 2010 Rule is not arbitrary and capricious, either as to the Department's policy changes in the 2010 Rule or in its application of the 2010 Rule to the plaintiff.  Accordingly, the Court denies the plaintiff's motion for summary judgment and grants the defendants' cross-motion for summary judgment.

**SO ORDERED** this 15th day of April, 2020.[7]

REGGIE B. WALTON
United States District Judge

---

[7] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.